# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**STEPHEN M. DAVIS,**

        **Plaintiff,**

**v.**                                **Case No: 6:22-cv-2222-PGB-EJK**

**ORANGE COUNTY,**

        **Defendant.**

_____/

## ORDER

This cause comes before the Court on Defendant's Motion to Dismiss (Doc. 9 (the "**Motion**")) and Plaintiff's response in opposition (Doc. 20). Upon consideration, the Motion is due to be granted.

## I.    BACKGROUND[1]

This case flows from the release of a firefighter from his employment by a Florida municipality. (Doc. 1-1). Before his termination in October 2021, Plaintiff Stephen M. Davis ("**Plaintiff**") was a Battalion Chief for the Orange County Fire and Rescue Battalion 4, a department within the municipality of Defendant Orange County, Florida ("**Defendant**"). (*Id.* ¶¶ 1, 6–7).  Part of Plaintiff's job responsibilities as Battalion Chief included administering disciplinary measures to his subordinates. (*Id.* ¶ 14).

---

[1]    This account of the facts comes from the Plaintiff's Complaint. (Doc. 1-1). The Court accepts these well-pled factual allegations as true when considering motions to dismiss. *See Williams v. Bd. of Regents*, 477 F.3d 1282, 1291 (11th Cir. 2007).

Due to the Covid-19 pandemic, Defendant set forth a vaccination policy for its employees. (*Id.* ¶¶ 2, 15). After some negotiation, the Orange County Fire Fighters Association Local 2057, the union representing Plaintiff and other Orange County firefighters, reached an agreement whereby its members were allowed to submit religious or health exemption accommodation requests in lieu of vaccination certifications by September 30, 2021. (*Id.* ¶¶ 2, 17–18). Under the union agreement, an employee who did not submit an exemption request or vaccination certification on or before this date was subject to written reprimand only—no further disciplinary action could be taken under the vaccination policy. (*Id.* ¶ 18). Those employees who did not submit a vaccination certification—either due to an exemption request or lack of submission altogether—were required to undergo weekly testing or else be subject to further discipline beyond written reprimands. (*Id.*). Plaintiff timely submitted a religious exemption request and was not himself subject to discipline for failing to comply with the vaccination policy. (*Id.* ¶ 16). Plaintiff also joined a lawsuit seeking to strike down Defendant's vaccine policy as unlawful on October 1, 2021.[2] (*Id.* ¶¶ 20, 30).

On October 5, 2021, Defendant, through Assistant Chief Kimberly Buffkin ("**Assistant Chief Buffkin**"), gave an order to the Battalion Chiefs to issue written reprimands for those employees on a provided list for failure to comply with the vaccination policy. (*Id.* ¶¶ 19, 21). Plaintiff believed some employees in

---

[2]   This suit was filed in Florida state court, and the Court may take judicial notice of the fact that the plaintiffs there voluntarily dismissed the suit as this public record can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. *See Wheat v. Orange County*, No. 2021-CA-009579-O (Fla. Orange Cnty. Ct. June 9, 2022).

his battalion who were on this list had requested exemptions. (*Id.* ¶ 23). Plaintiff received this list after close of business, so he could not contact Human Resources to verify his beliefs regarding the employees on the list. (*Id.* ¶ 25). Plaintiff further believed that to issue written reprimands in this situation would violate Florida and federal civil rights laws as well as Orange County Fire and Rescue Rules and Regulations. (*Id.* ¶¶ 24, 26, 28–29). Plaintiff both spoke with and sent an email to Assistant Chief Buffkin in order to express his concerns. (*Id.* ¶¶ 25, 27, 29–30). The email stated:

> Chief,
>
> Mesa and Landers are state they are vaccinated and filled out the county forms. Is there a way to confirm this? Secondly, station 50 does not have any test kits at their station. I have 5 boxes here, however, each box has an expired lot number that is not on the two pdfs you set out. How do you want me to proceed? It appears that all kits in B4 are expired too. I have reached out to all stations to get confirmation of their kits and each of them showed the same lot numbers.

(*Id.* at p. 117). That evening, Plaintiff met with Assistant Chief Buffkin in-person to further express his concerns. (*Id.* ¶ 31). After hearing Plaintiff's concerns, Assistant Chief Buffkin "gave a direct order to [Plaintiff] to issue the reprimands, without acknowledging or verifying if his concerns were correct. [Plaintiff] refused. [Plaintiff] was then immediately relieved of duty by [Assistant Chief] Buffkin." (*Id.*).

Plaintiff was officially terminated from his position following a predetermination hearing pursuant to departmental rules on October 13, 2021 that cited, among other violations of Orange County Fire & Rescue rules, his

violation of a direct order from a superior. (*Id.* ¶¶ 41–42). At this hearing, Plaintiff expressed his concerns in writing when at least two assistant chiefs were present along with a union representative, and this writing was provided to them after the hearing as well. (*Id.* ¶ 41). Plaintiff received notice of his official termination October 18, 2021, effective on October 19, 2021. (*Id.* ¶¶ 41, 44). Following this, Plaintiff provided written notice of what he alleges was an unlawful termination and retaliation to Orange County Mayor Jerry Demings ("**Mayor Demings**") on October 19, 2021. (*Id.* ¶¶ 7, 50). Plaintiff then appealed this determination through the Grievance and Arbitration procedure provided for in the Orange County Fire Rescue Collective Bargaining Agreement. (*Id.* ¶¶ 57–60). His appeal was denied. (*Id.*).

To remedy an alleged violation of the Florida Whistleblower Act flowing from these events, Plaintiff filed suit in Florida state court. (Doc. 9, p. 3). Plaintiff amended his complaint further alleging retaliation claims under Title VII of the Civil Rights Act ("**Title VII**"), the Florida Civil Rights Act (the "**FCRA**"), and the Americans With Disabilities Act (the "**ADA**") as well as breach of contract. (Doc. 1-1). Defendant removed the case to this Court. (Doc. 1). Defendant now moves to dismiss the amended complaint in full for failure to state a claim (Doc. 9), and after Plaintiff's response in opposition (Doc. 20), this matter is ripe for review.

## II.    STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions and recitation of a claim's elements are properly disregarded, and courts are "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Courts must also view the complaint in the light most favorable to the plaintiff and must resolve any doubts as to the sufficiency of the complaint in the plaintiff's favor. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994) (per curiam).

Furthermore, in ruling on a motion to dismiss, "[a] court is generally limited to reviewing what is within the four corners of the complaint" and the attachments thereto which are undisputed and central to the claim. *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002); *Austin v. Modern Woodman of Am.*, 275 F. App'x 925, 926 (11th Cir. 2008) (quoting *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1329 n.7 (11th Cir. 2006)). In addition, however, the court may consider documents central to a claim whose authenticity is not in dispute as well as matters that are subject to judicial notice. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Allen v. USAA Cas. Ins. Co.*, 790 F.3d 1274, 1278 (11th Cir. 2015); *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (permitting courts to consider documents attached to a motion to dismiss without converting the motion into one for summary judgment, but only if the

attached documents are central to the plaintiff's claims and undisputed); *see also* FED. R. EVID. 201 (stating that a court "may judicially notice a fact that is not subject to reasonable dispute" because it is either "generally known within the trial court's territorial jurisdiction" or it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

In sum, courts must: reject conclusory allegations, bald legal assertions, and formulaic recitations of the elements of a claim; accept well-pled factual allegations as true; and view well-pled allegations in the light most favorable to the plaintiff. *Iqbal*, 556 U.S. at 679.

## III.   DISCUSSION

In turn, the Court addresses the insufficiency of Plaintiff's FWA claim, his three retaliation claims, and his breach of contract claim.

### A.    The Florida Whistleblower's Act

The Florida Whistleblower's Act, FLA. STAT. §§ 112.3187–112.31895 (the "**FWA**"), is a remedial statute designed to encourage the elimination of public corruption by protecting public employees who 'blow the whistle,' so it should be construed liberally in favor of granting access to the remedy. *Martin County v. Edenfield*, 609 So. 2d 27, 29 (Fla. 1992). In order to state a claim under the FWA, plaintiff must allege sufficient facts for courts to plausibly conclude that (1) prior to termination, the plaintiff engaged in a protected activity (*i.e.*, a protected disclosure of information or a refusal to participate in acts prohibited by the FWA); (2) the plaintiff suffered an adverse employment action; and (3) the two

events are not wholly unrelated. FLA. STAT. § 112.3187(4); *Shaw v. Town of Lake Clarke Shores*, 174 So. 3d 444, 445–46 (Fla. 4th DCA 2015); *see also Nazzal v. Fla. Dep't of Corr.*, 267 So. 3d 1094, 1096 (Fla. 1st DCA 2019) (finding that plaintiff failed to state a claim under the FWA because she did not make a protected disclosure as statutorily defined even when liberally construed).

At issue here is whether Plaintiff has properly alleged a protected disclosure of information prior to termination under the FWA and whether Plaintiff's termination is not wholly unrelated to that alleged disclosure. The FWA sets parameters for what constitutes a protected disclosure of information regarding how the employee must make the disclosure, the nature of the information disclosed, and to whom the information must be disclosed. FLA. STAT. §§ 112.3187(5)–(7). For the following reasons, Plaintiff's FWA claim fails to plausibly allege he made a protected disclosure that is not wholly unrelated to his termination.

Public employees in Florida are protected if they either 1) "disclose information on their own initiative in a written and signed complaint;" or 2) "refuse to participate in any adverse action prohibited by this section." FLA. STAT. §§ 112.3187(7).[3] "[T]he purpose of requiring a signed writing is to document what

---

[3]   Plaintiff appears to argue that he alleges a protected act under both the disclosure prong and the refusal to participate prong of FLA. STAT. §§ 112.3187(7). (Doc. 20, pp. 7–10). However, while Plaintiff surely conclusorily mentions his refusal to participate, he does not ever allege that the acts which he refused to participate in were "adverse actions prohibited by this section"—that is, the taking of adverse actions against the employees subject to his oversight for protected disclosures under the FWA.  Instead, he refused to take action due to his belief that such action was prohibited by *other laws*, not the FWA. As such, the Court only analyzes the FWA's disclosure prong.

the employee disclosed, and to whom the employee disclosed it, thus avoiding problems of proof for purposes of the Whistle-blower's Act." *Walker v. Fla. Dep't. of Veterans' Affs.*, 925 So. 2d 1149, 1150 (Fla. 4th DCA 2006). Under FLA. STAT. § 112.3187(5), the signed writing must identify either the suspected violation at issue which presents a "substantial and specific danger to the public's health, safety, or welfare" or the "act or suspected act of gross mismanagement, malfeasance, misfeasance, gross waste of public funds, . . . or gross neglect of duty." FLA. STAT. § 112.3187(5); *Pickford v. Taylor Cnty. Sch. Dist.*, 298 So. 3d 707, 711 (Fla. 1st DCA 2020) (finding communication at issue was not a protected disclosure because employee merely disputed a pay discrepancy by explaining his understanding of the related policy rather than setting forth concerns that qualify as a statutorily protected disclosure under FLA. STAT. § 112.3187(5)). Only one writing in Plaintiff's complaint potentially qualifies as a protected disclosure.

First, Plaintiff's initial email to Assistant Chief Buffkin merely requests if it is possible to confirm the vaccination status of those employees for whom he was responsible. (Doc. 1-1, ¶ 30, p. 117). This email is not sufficiently detailed or related to the topics necessary for it to constitute a protected disclosure under the FWA. *Pickford*, 298 So. 3d at 711.

Second, Plaintiff includes multiple references to communications allegedly sent by other parties to various persons throughout the scope of this litigation. (*See* Doc. 1-1). These other communications do not qualify as protected

disclosures here because Plaintiff did not make them. *See Shaw*, 174 So. 3d at 445–46 (noting the plaintiff must make the disclosure protected by the FWA and the defendant must know it came from the plaintiff).

Third, Plaintiff mentions that he was one of many plaintiffs in a different lawsuit filed against Defendant challenging the lawfulness of the vaccination policy. (Doc. 1-1, ¶ 30). Filing such a suit is certainly filing a written and signed complaint, but this disclosure was not made to the proper local officials to qualify for FWA treatment but instead to a Florida state court. When the information disclosed concerns a "local government entity in Florida," the information must be disclosed to "a chief executive officer as defined in § 447.203(9) or other appropriate local official." FLA. STAT. § 112.3187(6).

While "other appropriate local official" is not further defined in FLA. STAT. § 112.3187(6), the Court concludes that the meaning of "appropriate" is cabined by its surrounding text. This is so because the text is not clear on its face by way of its ordinary or plain meaning. In a noted dictionary, "appropriate" is defined as "especially suitable or compatible: fitting." *Appropriate*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/appropriate (last visited July 20, 2023). This definition does not aid the Court because it does little to help the Court understand what would make other officials "suitable," "compatible," or "fitting." *Id.* Instead, the Court turns to the definition of "chief executive officer" for local governments, which is defined in the FWA as "the person, whether elected or appointed, who is responsible to the legislative body of the public

employer for the administration of the governmental affairs of the public employer." FLA. STAT. § 447.203(9). The Court gleans from this definition that the Florida legislature intended that some "other appropriate local official" to be a high-level administrative officer within a local government acting in an executive capacity and who is in some way democratically accountable. *Quintini v. Panama City Hous. Auth.*, 102 So. 3d 688, 689 (Fla. 1st DCA 2012) (concluding that the person or entity deemed to be an "other appropriate local official" must be affiliated with the local executive government in some way); *see also Burden v. City of Opa Locka*, No. 11–22018–civ, 2012 WL 4764592, at *13 (S.D. Fla. Oct. 7, 2012) (concluding that the city's human resources director and assistant city manager are "appropriate local officials" because they were empowered to investigate complaints and make reports or recommend corrective action). Consequently, a complaint filed with a local court is not a complaint filed with an "appropriate local official" under the FWA.

Fourth, Plaintiff allegedly made a written disclosure on October 19, 2021 regarding his concerns to Mayor Demings who he also alleges is the chief executive officer of Defendant Orange County. (Doc. 1-1, ¶¶ 50, 67). However, this disclosure occurred after his termination which was already made final the day previously, the appeal notwithstanding. (*Id.* ¶¶ 44, 50). As such, it is wholly unrelated to the potential adverse action taken against him—namely, his termination. *Shaw*, 174 So. 3d at 445–46.

Fifth and finally, Plaintiff alleges that around the time of the predetermination hearing, he "yet again, in writing expressed his grave concerns of the illegality of Defendant's conduct and demand that he engage in that unlawful conduct. This written defense was provided to higher command," including to at least "two assistant chiefs and a union representative." (Doc. 1-1, ¶¶ 42–44). This single vague conclusory allegation is the only potential writing in the complaint that might qualify as a protected disclosure under the FWA. Indeed, the two assistant chiefs might plausibly qualify as "other appropriate local official[s]" under FLA. STAT. § 112.3187(6) due to their capacity as high-ranking administrative officers in one of Defendant's executive municipal departments. Moreover, although Plaintiff does not allege the writing was signed as required, such a deficiency might be remedied upon repleader.

Repleader, however, is unnecessary. Critically, Plaintiff fails to plausibly allege that his concerns approximate the gravity necessary for them to fall under the purview of FLA. STAT. § 112.3187(5) even when liberally construed. Pursuant to the FWA, the information disclosed "must include" either: (1) a "violation or suspected violation of any federal, state, or local law, rule, or regulation committed by an employee or agent of an agency or independent contractor" and that violation must "create[] and present[] a substantial and specific danger to the public's health, safety, or welfare"; or (2) an "act or suspected act of gross mismanagement, malfeasance, misfeasance, gross waste of public funds, suspected or actual Medicaid fraud or abuse, or gross neglect of duty committed

by an employee or agent of an agency or independent contractor." FLA. STAT. § 112.3187(5). As a preliminary matter, Plaintiff fails to plead his concerns which he expressed in the writing he allegedly gave to the relevant attendees of his predetermination hearing. (Doc. 1-1, ¶¶ 42–44). Even when read in the light most favorable to Plaintiff such that the Court infers Plaintiff's concerns from the rest of his pleadings and the Court assumes the administration of the discipline described in the Complaint would be discriminatory for some reason, there is no arguable case based on the information pled that such discipline would have either created a "substantial and specific danger to the public's health, safety, or welfare" or constituted an "act or suspected act of gross mismanagement, malfeasance, misfeasance, gross waste of public funds, . . . or gross neglect of duty." FLA. STAT. § 112.3187(5). While Defendant's system for creating lists of employees subject to a written reprimand for initial lack of compliance with the vaccination policy could be plausibly characterized as an act of mismanagement, if it indeed contained employees who had timely submitted exemption requests, yet it is not plausible to characterize it as grossly so. *Id.* What is more, the insinuation that such a bureaucratic snafu could have plausibly created a "substantial and specific danger to the public's health, safety, or welfare" is not tenable. *Id.* Accordingly, Plaintiff fails to plausibly allege he engaged in protected activity under the FWA and thus fails to state such a claim.

**B.      Retaliation Under Title VII, the FCRA, and the ADA**

Similarly, to establish a *prima facie* case of retaliation under Title VII, the FCRA, and the ADA (collectively, the "**Acts**"),[4] Plaintiff must demonstrate three elements: (1) he engaged in protected activity, (2) he suffered an adverse employment action, and (3) the adverse employment action was causally related to his protected activity. *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1454 (11th Cir. 1998). It is undisputed that Plaintiff suffered an adverse employment action due to his termination. Instead, the plausibility of whether Plaintiff engaged in a protected activity under the Acts is chiefly at issue here.

There are two types of protected activities under the Acts: those afforded protection under a participation theory and those afforded protection under an opposition theory. *See Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 274–75 (2009). Plaintiff proceeds under an "opposition" theory, not a participation theory.[5] Under an opposition theory, plaintiffs can

---

[4]  Florida courts interpret the retaliation provisions of the FCRA in accord with Title VII because the FCRA is patterned after Title VII. *Hinton v. Supervision Int'l, Inc.*, 942 So. 2d 986, 989 (Fla. 5th DCA 2006) (citing *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385 (11th Cir. 1998) ("Florida courts have held that decisions construing Title VII are applicable when considering claims under the Florida Civil Rights Act.")). The same goes for the ADA. *Chanda v. Engelhard/ICC*, 234 F.3d 1219, 1225 (11th Cir. 2000); *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1328 (11th Cir. 1998); *see also Stewart v. Happy Herman's Cheshire Bridge*, 117 F.3d 1278, 1287 (11th Cir. 1997).

[5]  A participation theory flows from Title VII's Participation Clause which "protects proceedings and activities which occur in conjunction with or after the filing of a formal charge [of discrimination] with the EEOC; it does not include participating in an employer's internal, in-house investigation, conducted apart from a formal charge with the EEOC." *Equal Employment Opportunity Commission v. Total Systems Services, Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000). Plaintiff admits in effect that he proceeds under an opposition theory because he did not file anything with the EEOC until after his employment ended. (Doc. 1-1,

plead a prima facie case of protected activity by showing they reasonably believed they were opposing an employer's unlawful conduct. *Howard v. Walgreen Co.*, 605 F.3d 1239, 1244 (11th Cir. 2010).  While the employer conduct at issue need not actually be unlawful, the plaintiffs must both 1) subjectively believe in good faith it is unlawful and 2) the belief must be objectively reasonable.[6] *Id.* To be objectively reasonable, the allegedly unlawful employment practice at issue is measured against the existing substantive law at the time of the incident.[7] *See id.* (citing *Clover v. Total Sys. Serv., Inc.*, 176 F.3d 1346, 1351 (11th Cir. 1999)).

Plaintiff alleges he engaged in protected activity when he refused to follow Defendant's order to issue discipline to employees whom he knew or reasonably believed had sought an exemption from Defendant's vaccination policy (or who were otherwise compliant with that same policy) such that administering that discipline would have constituted disability or religious discrimination under the civil rights laws, including Title VII, the ADA, and the FCRA; Plaintiff further alleges he communicated this belief when he opposed his superior's orders. (Doc.

---

¶¶ 57–62; Doc. 20, p. 10 ("the first element may be demonstrated as opposition to an employer's conduct")).

[6] Plaintiff plausibly alleges he subjectively believed Defendant's actions to be unlawful. (Doc. 1-1, ¶ 29). Thus, the Court only scrutinizes the objective reasonability of this belief.

[7] The intervening change in Florida law regarding the legality of Defendant's vaccination policy occurred after Defendant engaged in the alleged protected activity. (Doc. 20, p. 12). Because the Court must only consider the state of the law *at the time of the incident*, this change in law is irrelevant to the objective reasonableness of Plaintiff's belief regarding the existing substantive law.

1-1, ¶¶ 3, 22–26, 28–29, 31–44, 51–57, 68, 70–73, 79, 81–83, 85, 91, 93–95, 97, 104, 107–10; Doc. 20, pp. 10–16).[8] For the following reasons, the Court disagrees.

As an initial matter, opposing alleged discrimination under the Acts is a protected activity only when it is objectively reasonable to believe the elements of an underlying discrimination claim are present. *Howard*, 605 F.3d at 1244. One of the elements of discrimination under the Acts is an adverse employment action. *Maynard v. Bd. of Regents of Div. of Univ. of Fla. Dep't of Educ. ex rel. Univ. of S. Fla.*, 342 F.3d 1281, 1289 (11th Cir. 2003) (noting Title VII discrimination claim requires adverse employment action); *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001) (detailing that an ADA discrimination claim requires an adverse employment action). Not all employer actions that negatively impact an employee such as a written reprimand qualify as "adverse employment actions." *Davis v. Town of Lake Park*, 245 F.3d 1232, 1238 (11th Cir. 2001). Rather, only those employment actions that result in "a serious and material change in the terms, conditions, or privileges of employment" suffice. *Id.* at 1239 (emphasis in original). Moreover, the employee's subjective view of the significance and adversity of the employer's

---

[8]  Of note, Plaintiff argues that many of Defendant's "protected activity" arguments pertain to factual matters that should be fleshed out in discovery. (Doc. 20, pp. 11, 13, 15–16).   The Court ultimately disagrees. While Plaintiff need not meet the bar necessary to survive summary judgment, it is a legal question whether the non-conclusory allegations pled in the Complaint support a plausible inference that Plaintiff had an objectively reasonable belief that he was opposing unlawful employer actions. *See Henderson v. JP Morgan Chase Bank, N.A.*, 436 F. App'x 935, 937 (11th Cir. 2011). As such, Defendant does not "illustrate[ its] animus" against Plaintiff by citing to various allegations within the Complaint in order to support its argument that Plaintiff's belief regarding the unlawfulness of Defendant's actions as the employer was not objectively reasonable. (Doc. 20, p. 11).

action does not control; the employee must be materially disadvantaged as viewed by a reasonable person under the circumstances such that the employer action results in a serious change in the terms, conditions, and privileges of employment. *Id.*; *Howard*, 605 F.3d at 1245; *Davis*, 245 F.3d at 1239.

Here, Plaintiff argues, in effect, that if he had issued the reprimands as ordered, those employees would have experienced a material and serious change in the terms, conditions, or privileges of their employment. (*See* Doc. 20, p. 15). Plaintiff acknowledges Defendant's vaccination policy provided that, beyond being subject to written reprimand, "[n]o further disciplinary action shall be taken for failing to comply with the COVID-19 vaccination policy deadlines. This written reprimand shall not be considered or used in the bargaining unit member's performance evaluation." (Doc. 1-1 ¶¶ 17–18; Doc. 1-1, p. 38). Plaintiff notes this disciplinary policy does not comport with Defendant's normal policy which provides that written reprimands can give rise to "future discipline up to and including termination." (Doc. 1-1, ¶ 40; Doc. 20, p. 15). Plaintiff further argues that this reprimand "was part of progressive discipline": those who did not timely submit their exemption request were subject to testing requirements, which if uncompiled with could give rise to disciplinary measures beyond a written reprimand. (Doc. 1-1, ¶¶ 17–18; Doc. 1-1, pp. 38–39; Doc. 20, p. 15). In other words, Plaintiff contends that it was objectively reasonable for him to believe that administering this discipline would result in an adverse employment action to those subject to that discipline such that they would have been seriously

and materially disadvantaged. (Doc. 20, pp. 14–16). At the minimum, Plaintiff argues this is a question on which he is entitled to seek discovery. (*Id.*).

Even when the allegations are viewed in the light most favorable to Plaintiff, the Court disagrees. *See Wallace v. Georgia Dep't. of Transp.*, 212 F. App'x. 799, 801 (11th Cir. 2006)[9] (holding written reprimand that did not lead to any tangible harm in the form of lost pay or benefits did not qualify as prima facie case necessary to establish an adverse employment action). First, no reasonable person in Plaintiff's position would have believed that the vaccination policy's express disciplinary procedures would not control rather than the general disciplinary procedures. (Doc. 1-1, pp. 38–39). Second, no reasonable person would thus have believed any further potential discipline administered would be related to the discipline Plaintiff was ordered to administer. (*Id.*). Third, no reasonable person in Plaintiff's position would have believed that Defendant would not wipe out this discipline from the records of its employees who did, in fact, comply with the policy after its human resource lists were accurately updated as Defendant, through Assistant Chief Buffkin, had reiterated would occur. (*Id.* ¶¶ 23, 35). Finally, no reasonable person in Plaintiff's position would have believed that continued improper disciplinary measures would necessarily come to pass against those same employees due to anything beyond their own improper actions. (*Id.* at pp. 38–39).

---

[9]   "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345 (11th Cir. 2007).

In short, it was not objectively reasonable for Plaintiff to believe he was opposing unlawful discrimination because a reasonable person would not view the discipline he was ordered to administer as imposing a material and serious employment disadvantage on the employees in question. *Davis*, 245 F.3d at 1239. Accordingly, Plaintiff fails to plausibly allege an underlying adverse employment action and thus that he engaged in protected activity under the Acts.[10] The retaliation claims in Counts II, III, and IV therefore fail to state a claim for which relief can be granted.

### C.      Breach of Contract

Finally, Plaintiff alleges Defendant violated the Collective Bargaining Agreement (the "**CBA**") to which his employment with Defendant was subject. (*Id.* ¶¶ 112–120). Specifically, Plaintiff alleges Defendant breached its duties to Plaintiff under the CBA by: 1) failing to engage in the grievance process in good

---

[10]  Plaintiff's ADA claim fails for an additional reason. To assert a claim of discrimination under the ADA, an employee must first establish they are disabled. *Hillburn v. Murata Elecs. N. Am., Inc.*, 181 F.3d 1220, 1226 (11th Cir. 1999). The term "disability" is defined under the ADA as either (1) a physical or mental impairment that substantially limits one or more major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having an impairment. 42 U.S.C. § 12102. "Major life activities" include, for example, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working. 42 U.S.C. § 12102(2)(A).

Here, an employee that voluntarily chooses not to get vaccinated does not have a physical or mental impairment that substantially limits one or more major activities; neither is such an employee regarded as having such an impairment or as having a record of the same. *Id.* Plaintiff does not put forward any non-conclusory arguments to the contrary; the arguments he does muster are entirely bereft of citation to persuasive or controlling authority. (*See* Doc. 20, p. 14 n.5). As such, the employees Plaintiff was allegedly protecting from discrimination were not disabled as defined under the ADA. Consequently, it was not objectively reasonable for Plaintiff to believe that administering discipline to those on the list constituted disability discrimination.

faith; 2) withholding evidence during that process; 3) failing to conduct a fair investigation as part of that process; 4) applying Orange County Fire and Rescue rules "unequally;" 5) making changes to the CBA's disciplinary process without appropriately bargaining with the union; 6) inappropriately disciplining Plaintiff in violation of the CBA; and 7) failing to timely select an arbitrator and "move forward with the grievance process." (*Id.*). Defendant counters correctly that the Florida Public Employees Relations Commission ("**PERC**") has exclusive jurisdiction over labor disagreements such as this one involving the implementation and interpretation of organized labor agreements. (Doc. 9, pp. 21–22).

The Florida Legislature in FLA. STAT. § 447.503 created and empowered PERC to resolve "disputes regarding alleged unfair labor practices" as defined in FLA. STAT. § 447.501. *Browning v. Brody*, 796 So. 2d 1191, 1192 (Fla. 5th DCA 2001); *City of Orlando v. Cent. Fla. Police Benev. Ass'n*, 595 So. 2d 1087, 1089 (Fla. 5th DCA 1992) (noting PERC "was intended to provide the exclusive method for resolving labor disputes between public employees and employers") (citing *Maxwell v. Sc. Bd. Of Broward Cnty.*, 330 So. 2d 177, 179 (Fla. 4th DCA 1976)). Any practice that "arguably" constitutes an unfair labor practice as defined in § 447.501 falls within PERC's exclusive jurisdiction. *Browning*, 796 So. 2d at 1192. These unfair labor practices relevantly include:

> (1) Public employers or their agents or representatives are prohibited from:

> (a) Interfering with, restraining, or coercing public employees in the exercise of any rights guaranteed them under this part.
>
> . . .
>
> (c) Refusing to bargain collectively or failing to bargain collectively in good faith with a public employer.
>
> (d) Discharging or discriminating against a public employee because he or she has filed charges or given testimony under this part.
>
> (e) Dominating, interfering with, or assisting in the formation, existence, or administration of, any employee organization or contributing financial support to such an organization.
>
> (f) Refusing to discuss grievances in good faith pursuant to the terms of the collective bargaining agreement with either the certified bargaining agent for the public employee or the employee involved.

Fla. Stat. § 447.501(1). Moreover, "whether a claim is within PERC's exclusive jurisdiction depends [on] the nature and substance of the claim, not on how the plaintiff labels the claim." *City of Hollywood v. Perrin*, 292 So. 3d 808, 812 (Fla. 4th DCA 2020) (declining to exercise jurisdiction over claim requesting court to compel arbitration pursuant to alleged violation of a CBA provision due to PERC's exclusive jurisdiction over the same). Each one of Defendant's alleged violations of its duties under the CBA arguably falls under the ambit of Fla. Stat. § 447.501. As such, these grievances should have been brought before PERC, not this Court. Consequently, the Court cannot exercise jurisdiction over the claim.

Plaintiff is muddled in his response.[11] He states, "Statutorily provided labor dispute resolution schemes do not preempt causes of action to enforce rights that are independent of the CBA, including statutory rights like [Plaintiff's] Counts I-IV." (Doc. 20, p. 17). Too true. Defendant, however, moved to dismiss only the breach of contract claim in Count V due to the exclusive jurisdiction of PERC. Plaintiff further appears to concede that Count V is not an independent cause of action when he states that his allegations therein "fundamentally draw from the terms of the CBA only with regard to his claims for retaliation under statutory provisions providing for their own administrative remedy and civil right of action, not with regard to the interpretation of the CBA terms themselves or the provisions of Florida's labor laws." (*Id.* at p. 18). To the extent that Defendant's alleged violations of the CBA and its provisions form the backdrop to Plaintiff's FWA and retaliation claims, the Court agrees such allegations speak to those claims.[12] They do not, however, state an independent claim for breach of the CBA as a contract. Plaintiff's claim is, in reality, an allegation that Defendant engaged in unfair labor practices by failing to comply with the CBA in good faith—in other words, a claim that falls under PERC's exclusive jurisdiction.

---

[11] For example, Plaintiff chiefly relies on a wholly inapposite case involving the federal Railway Labor Act's preemption of underlying state claims, not a case related to PERC and its exclusive jurisdiction. (Doc. 20, pp. 16–17). In fact, Plaintiff never specifically cites to *any* authority dealing with PERC or its exclusive jurisdiction. (*See id.*).

[12] Nevertheless, these claims fail for the reasons outlined above.

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that:

1.      Defendant's Motion to Dismiss (Doc. 9) is **GRANTED**;

2.      Plaintiff's claims against Defendant Orange County, Florida in the Complaint (Doc. 1-1) are dismissed as follows:

   a.      Counts I, II, III, and IV are **DISMISSED WITH PREJUDICE**;

   b.      Count V is **DISMISSED WITHOUT PREJUDICE** yet without leave to replead;[13] and

3.      The Clerk of Court is **DIRECTED** to close the file.

**DONE AND ORDERED** in Orlando, Florida on July 25, 2023.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record
Unrepresented Parties

---

[13]   A dismissal for lack of jurisdiction must be made without prejudice so that the party may refile when and where appropriate, if possible. *See Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008). To proceed with this count before this Court, however, would be futile as the Court cannot exercise jurisdiction over it.