## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**STEPHEN M. DAVIS,**

        **Plaintiff,**

**v.**                            **Case No: 6:22-cv-2222-PGB-UAM**

**ORANGE COUNTY,**

        **Defendant.**

_____/

## ORDER

      This cause is before the Court upon remand from the Eleventh Circuit Court of Appeals. (Docs. 31, 32). The Court previously granted Defendant Orange County's ("**Defendant**") Motion to Dismiss and dismissed Plaintiff Stephen M. Davis's ("**Plaintiff**") claims with prejudice. (Doc. 27 (the "**Order**")). Plaintiff appealed the Order's dismissal of his retaliation claims. (Doc. 28). During the pendency of Plaintiff's appeal, the Supreme Court decided *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024), which is applicable to the Court's analysis of Plaintiff's retaliation claims. (Doc. 31). Accordingly, the Eleventh Circuit Court of Appeals vacated the Order and remanded the case for this Court to reassess Plaintiff's retaliation claims under *Muldrow*. (Docs. 31, 32).

## I.    BACKGROUND[1]

The factual background of this case was previously outlined in the Court's Order granting Defendant's Motion to Dismiss. (Doc. 27, pp. 1–4).

Plaintiff's retaliation claims arise under Title VII of the Civil Rights Act of 1964 ("**Title VII**"), the Florida Civil Rights Act (the "**FCRA**"), and the Americans with Disabilities Act of 1990 (the "**ADA**"). (Doc. 1-1). The parties filed supplemental briefing regarding *Muldrow*, and the matter is thus ripe for review. (Docs. 35, 36).

## II.    STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions and recitation of a claim's elements are properly disregarded, and courts are "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Courts must also view the complaint in the light most favorable to the plaintiff and must resolve any doubts

---

[1]    This account of the facts comes from Plaintiff's Complaint. (Doc. 1-1). The Court accepts well-pled factual allegations as true when considering motions to dismiss. *See Williams v. Bd. of Regents*, 477 F.3d 1282, 1291 (11th Cir. 2007).

as to the sufficiency of the complaint in the plaintiff's favor. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994) (per curiam).

Furthermore, in ruling on a motion to dismiss, "[a] court is generally limited to reviewing what is within the four corners of the complaint" and the attachments thereto which are undisputed and central to the claim. *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002); *Austin v. Mod. Woodman of Am.*, 275 F. App'x 925, 926 (11th Cir. 2008)[2] (quoting *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1329 n.7 (11th Cir. 2006)). In addition, however, the court may consider documents central to a claim whose authenticity is not in dispute as well as matters that are subject to judicial notice. *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007); *Allen v. USAA Cas. Ins. Co.*, 790 F.3d 1274, 1278 (11th Cir. 2015); *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (permitting courts to consider documents attached to a motion to dismiss without converting the motion into one for summary judgment, but only if the attached documents are central to the plaintiff's claims and undisputed); *see also* FED. R. EVID. 201 (stating that a court "may judicially notice a fact that is not subject to reasonable dispute" because it is either "generally known within the trial court's territorial jurisdiction" or it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

---

[2]     "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345 (11th Cir. 2007).

In sum, courts must: reject conclusory allegations, bald legal assertions, and formulaic recitations of the elements of a claim; accept well-pled factual allegations as true; and view well-pled allegations in the light most favorable to the plaintiff. *Iqbal*, 556 U.S. at 679.

## III.    DISCUSSION

In reassessing Plaintiff's retaliation claims, the Court again turns to "two Title VII provisions that provide interwoven, but not identical, protections to employees." (Doc. 31, p. 6). Namely, the Court considers Title VII's retaliation and discrimination provisions. (*Id.*).

### A.    Title VII: Retaliation Provision

First, under Title VII's retaliation provision, it is unlawful for a covered employer to retaliate against an employee because the employee "opposed any practice made an unlawful employment practice" by Title VII. 42 U.S.C. § 2000e-3(a).

To establish a *prima facie* case of retaliation under Title VII, the FCRA, and the ADA (collectively, the "**Acts**"),[3] Plaintiff must demonstrate three elements: "(1) that he engaged in statutorily protected activity; (2) that he suffered adverse employment action; and (3) that the adverse employment action was causally

---

[3]    Florida courts interpret the retaliation provisions of the FCRA in accord with Title VII because the FCRA is patterned after Title VII. *Hinton v. Supervision Int'l, Inc.*, 942 So. 2d 986, 989 (Fla. 5th DCA 2006) (citing *Harper v. Blockbuster Ent. Corp.*, 139 F.3d 1385 (11th Cir. 1998)) ("Florida courts have held that decisions construing Title VII are applicable when considering claims under the Florida Civil Rights Act."). The same goes for the ADA. *Chanda v. Engelhard/ICC*, 234 F.3d 1219, 1225 (11th Cir. 2000); *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1328 (11th Cir. 1998); *see also Stewart v. Happy Herman's Cheshire Bridge*, 117 F.3d 1278, 1287 (11th Cir. 1997).

related to the protected activity." *Harper v. Blockbuster Ent. Corp.*, 139 F.3d 1385, 1388 (11th Cir. 1998).

It is undisputed that Plaintiff suffered an adverse employment action due to his termination. Instead, the "narrow issue before us in this case is whether [Plaintiff] engaged in statutorily protected activity when he opposed the [Defendant's] order to issue the written reprimands." (Doc. 31, p. 7).

       1.   *Protected Activity*

There are two types of protected activities under Title VII: those afforded protection under a participation theory and those afforded protection under an opposition theory. *See Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271, 274–75 (2009). Plaintiff proceeds under an "opposition" theory. The Eleventh Circuit has previously held that "[a] plaintiff engages in statutorily protected activity when he or she protests an employer's conduct which is actually lawful, so long as he or she demonstrates a good faith, *reasonable belief* that the employer was engaged in unlawful employment practices." *Harper*, 139 F.3d at 1388 (emphasis added) (internal quotation marks and citations omitted). "However, it is insufficient for a plaintiff to allege his belief in this regard was honest and bona fide; the allegations and record must also indicate that the belief, though perhaps mistaken, was *objectively reasonable*." *Id.* (emphasis added).

Plaintiff alleges he engaged in statutorily protected activity when he refused to follow Defendant's order to issue the written reprimands to firefighters whom he knew or reasonably believed had sought an exemption from Defendant's

vaccination policy (or who were otherwise compliant with that same policy) such that administering the written reprimands would have constituted disability or religious discrimination under the Acts; Plaintiff further alleges he communicated this belief when he opposed his superior's orders. (Doc. 1-1, ¶¶ 3, 22–26, 28–29, 31–44, 51–57, 68, 70–73, 79, 81–83, 85, 91, 93–95, 97, 104, 107–10; Doc. 20, pp. 10–16).[4]

Thus, to determine whether Plaintiff "alleged an objectively reasonable belief that [Defendant] was discriminating against the firefighters designated to receive the written reprimands, we turn to the next Title VII provision—the substantive discrimination provision." (Doc. 31, p. 7).

**B.    Title VII: Discrimination Provision**

Under Title VII's discrimination provision, it is unlawful for an employer to discriminate against an employee "with respect to his compensation, terms, conditions, or privileges of employment" due to the employee's membership in a protected class. 42 U.S.C. § 2000e-2(a)(1). (*See* Doc. 31, p. 8 n.3). "An employer's discriminatory act must rise to the level of an 'adverse employment action' to fall

---

[4]    Of note, Plaintiff argues that many of Defendant's "protected activity" arguments pertain to factual matters that should be fleshed out in discovery. (Doc. 20, pp. 11, 13, 15–16). The Court ultimately disagrees. While Plaintiff need not meet the bar necessary to survive summary judgment, it is a legal question whether the non-conclusory allegations pled in the Complaint support a plausible inference that Plaintiff had an objectively reasonable belief that he was opposing unlawful employer actions. *See Henderson v. JP Morgan Chase Bank, N.A.*, 436 F. App'x 935, 937 (11th Cir. 2011). As such, Defendant does not "illustrate[ its] animus" against Plaintiff by citing to various allegations within the Complaint in order to support its argument that Plaintiff's belief regarding the unlawfulness of Defendant's actions as the employer was not objectively reasonable. (Doc. 20, p. 11).

under Title VII's prohibitions." (Doc. 31, p. 8 (quoting *Howard v. Walgreen Co.*, 605 F.3d 1239, 1245 (11th Cir. 2010))).

### 1.    *Adverse Employment Action: Plaintiff's Allegations*

Plaintiff argues, in effect, that if he had issued the written reprimands as ordered, those firefighters would have experienced an adverse employment action. (*See* Doc. 20, p. 15). Plaintiff acknowledges Defendant's vaccination policy provided that, beyond being subject to written reprimand, "[n]o further disciplinary action shall be taken for failing to comply with the COVID-19 vaccination policy deadlines. This written reprimand shall not be considered or used in the bargaining unit member's performance evaluation." (Doc. 1-1, ¶¶ 17–18; Doc. 1-1, p. 38). Plaintiff notes this disciplinary policy does not comport with Defendant's normal policy which provides that written reprimands can give rise to "future discipline up to and including termination." (*Id.* ¶ 40; Doc. 20, p. 15). Plaintiff further argues that this reprimand "was part of progressive discipline": those who did not timely submit their exemption request were subject to testing requirements, which if uncompiled with could give rise to disciplinary measures beyond a written reprimand. (Doc. 1-1, ¶¶ 17–18; Doc. 1-1, pp. 38–39; Doc. 20, p. 15). In other words, Plaintiff contends that it was objectively reasonable for him to believe that administering this discipline would result in an adverse employment action to those subject to that discipline. (Doc. 20, pp. 14–16). At a minimum, Plaintiff argues this is a question on which he is entitled to seek discovery. (*Id.*).

2.    *Adverse Employment Action: Before vs. After Muldrow*

Before *Muldrow*, the Eleventh Circuit held that an adverse employment action is "a serious and material change in the terms, conditions, or privileges of employment." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 921 (11th Cir. 2018) (emphasis omitted) (internal quotation marks omitted). After *Muldrow*, the plaintiff still "must show *some* harm respecting an identifiable term or condition of employment," although that harm need not be "significant . . . [o]r serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar." *Muldrow*, 601 U.S. at 354–55 (emphasis added). In other words, a plaintiff must show a "disadvantageous change in an employment term or condition." *Id.* at 354 (internal quotation marks and citation omitted).

As the Eleventh Circuit noted, this Court previously found—under the pre-*Muldrow* standard—that "no reasonable person could believe the written reprimands constituted serious and material changes to the firefighters' employment because they had *no effect* on their employment at all." (Doc. 31, p. 5 (emphasis added); Doc. 27, pp. 17–18). In reaching this finding, the Court explained that:

> First, no reasonable person in Plaintiff's position would have believed that the vaccination policy's express disciplinary procedures would not control rather than the general disciplinary procedures. (Doc. 1-1, pp. 38–39). Second, no reasonable person would thus have believed any further potential discipline administered would be related to the discipline Plaintiff was ordered to administer. (*Id.*). Third, no reasonable person in Plaintiff's position would have believed

> that Defendant would not wipe out this discipline from the records of its employees who did, in fact, comply with the policy after its human resource lists were accurately updated as Defendant, through Assistant Chief Buffkin, had reiterated would occur. (*Id.* ¶¶ 23, 35). Finally, no reasonable person in Plaintiff's position would have believed that continued improper disciplinary measures would necessarily come to pass against those same employees due to anything beyond their own improper actions. (*Id.* at pp. 38–39).

(Doc. 27, p. 17).

The Court finds its previous reasoning equally applicable under "the more lenient *Muldrow* standard." (Doc. 31, p. 9). Again, as the Eleventh Circuit noted, this Court previously found that the alleged adverse employment actions—the written reprimands—had "*no effect*," or harm, on the firefighters' employment. (*Id.* at p. 5 (emphasis added); Doc. 27, pp. 17–18). The Court's finding hinged on the *absence* of harm to the firefighters' employment, rather than the *severity* of harm. (*Id.*). While *Muldrow* explains that a harm need not be "serious, or substantial, or any similar adjective," it still requires that there be "some harm." *Muldrow*, 601 U.S. at 354–55. Simply put, Plaintiff's allegations do not lead to an objectively reasonable belief that the written reprimands caused harm, or could have caused harm, here—before or after *Muldrow*. (*See* Doc. 1-1).

Even if Plaintiff alleged "some harm," Plaintiff fails to allege "some harm *respecting an identifiable term or condition of employment*." *Muldrow*, 601 U.S. at 355 (explaining that the "'terms [or] conditions' phrase . . . circumscribes the injuries that can give rise to a suit"). Plaintiff fails to identify a single term or condition of the firefighters' employment that was harmed, or could have been

harmed, by the written reprimand. (*See* Doc. 1-1). To the contrary, Plaintiff alleges that, beyond the written reprimand, "[n]o further disciplinary action" could "be taken for failing to comply with the COVID-19 vaccination policy deadlines." (Doc. 1-1, p. 38). Moreover, the vaccination policy delineated that the "written reprimand shall not be considered or used in the [firefighter's] performance evaluation." (*Id.*). Based on these allegations, the Court cannot reasonably infer that the written reprimands harmed the "what, where, and when" of the firefighters' employment. *Muldrow*, 601 U.S. at 354.

Notably, the decisions of other courts applying *Muldrow* to similar cases strongly support the findings reached herein. *See, e.g.*, *Rios v. Centerra Grp. LLC*, 106 F.4th 101, 112–13 (1st Cir. 2024) ("A mere admonition by a supervisor without any formal consequences is not an adverse employment action because it does not represent any disadvantageous change in the terms or conditions of the plaintiff's employment."); *McNeal v. City of Blue Ash*, 117 F.4th 887, 903 (6th Cir. 2024) (finding that a written reprimand—without more—is insufficient to amount to an adverse employment action); *Kelso v. Vilsack*, No. 19-3864, 2024 WL 5159101, at *7 (D.D.C. Dec. 18, 2024) ("While the letters [of reprimand] indicate that a failure to comply could result in [plaintiff's] termination, the issuance of the letters did not affect any of the terms, conditions, or privileges of [plaintiff's] employment. Simply put, nothing in the letters changed the 'what, where, or when' of her work with [d]efendant."); *Credle v. Va. Cmty. Coll. Sys.*, No. 3:24cv233, 2025 WL 27827, at *8 (E.D. Va. Jan. 23, 2025) ("While [p]laintiff alleges that the Letter of

Reprimand caused her 'emotional distress' and 'the loss of career path opportunities,' neither of these allegations show that the Letter o[f] Reprimand detrimentally altered the terms and conditions of [p]laintiff's employment. . . . As such, the Letter o[f] Reprimand did not constitute an adverse employment action for purposes of a Title VII discrimination claim."); *Obermeyer v. McDonough*, No. 1:23-cv-711, 2024 WL 3890686, at *6 n.4 (S.D. Ohio Aug. 21, 2024) (holding that a "formal counseling document that would be punitive in nature"—without more—did not amount to an adverse action at the pleading stage because plaintiff did not allege "that she received any punitive discipline or that the terms or conditions of her employment were affected"); *Anmar v. McDonough*, No. 22-1608, 2025 WL 692084, at *8–10 (D. Del. Mar. 4, 2025) (finding that plaintiff failed to demonstrate a *prima facie* case of discrimination under Title VII because nothing in the letter of reprimand changed the "what, where, or when" of plaintiff's employment); *Zienni v. Mercedes Benz U.S. v. Int'l, Inc.*, No. 7:23-cv-01002, 2024 WL 4829484, at *6 (N.D. Ala. Nov. 19, 2024) (finding that plaintiff's allegations that he "*could have* been subject to discipline, which may eventually have included termination" were "hypothetical" and thus "caused no actual harm to an 'identifiable term or condition'" of plaintiff's employment (emphasis in original)).

Ultimately, even under *Muldrow*'s lower threshold, Plaintiff still fails to show that the written reprimands amounted to adverse employment actions under the Title VII's discrimination provision. Consequently, Plaintiff could not have had an "objectively reasonable" belief that Defendant was unlawfully discriminating

against the firefighters when it ordered the written reprimands to be issued. *See Harper*, 139 F.3d at 1388. Plaintiff's opposition to issuing the written reprimands, thus, was not "statutorily protected activity." *Id.* As a result, Plaintiff fails to demonstrate a *prima facie* case of retaliation under Title VII, the FCRA, and the ADA.[5] *See supra* note 3 (explaining that the FCRA and ADA are interpreted in accord with Title VII).

---

[5]   Plaintiff's ADA claim fails for an additional reason. To assert a claim of discrimination under the ADA, an employee must first establish they are disabled. *Hillburn v. Murata Elecs. N. Am., Inc.*, 181 F.3d 1220, 1226 (11th Cir. 1999). The term "disability" is defined under the ADA as either (1) a physical or mental impairment that substantially limits one or more major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having an impairment. 42 U.S.C. § 12102. "Major life activities" include, for example, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working. 42 U.S.C. § 12102(2)(A).

Here, an employee that voluntarily chooses not to get vaccinated does not have a physical or mental impairment that substantially limits one or more major activities; neither is such an employee regarded as having such an impairment or as having a record of the same. *Id.* Plaintiff does not put forward any non-conclusory arguments to the contrary; the arguments he does muster are entirely bereft of citation to persuasive or controlling authority. (*See* Doc. 20, p. 14 n.5). As such, the employees Plaintiff was allegedly protecting from discrimination were not disabled as defined under the ADA. Consequently, it was not objectively reasonable for Plaintiff to believe that administering discipline to those on the list constituted disability discrimination.

## IV.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that:

1.    Defendant's Motion to Dismiss (Doc. 9) is **GRANTED**.

2.    Plaintiff's claims on remand—Counts II, III, and IV—against Defendant Orange County, Florida are **DISMISSED WITH PREJUDICE**.

3.    The Clerk of Court is **DIRECTED** to close the file.

**DONE AND ORDERED** in Orlando, Florida on March 30, 2025.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties